585 So.2d 354 (1991)
Walter G. TUNDERMAN, Appellant,
v.
Young Ja LEE, As Personal Representative of the Estate of Polly Tunderman, Appellee.
Nos. 90-00402, 90-02040.
District Court of Appeal of Florida, Second District.
August 7, 1991.
Rehearing Denied September 18, 1991.
*355 E.C. Watkins, Jr., Plant City and John D. Hooker, Tampa, for appellant.
Jeanne L. Coleman, Tampa, for appellee.
RYDER, Acting Chief Judge.
Walter G. Tunderman seeks review of the trial court's order granting his former wife, Polly Tunderman's, motion to bifurcate the dissolution proceeding. Mr. Tunderman also seeks review of the distribution of marital assets in the final judgment of dissolution of marriage. We affirm in part and reverse in part.
An order was filed on November 27, 1989 setting a nonjury trial on January 10, 1990, for the dissolution of marriage proceedings. Because Mrs. Tunderman's physical condition was deteriorating, her counsel filed a motion to bifurcate on December 20, 1989. A notice of hearing on the motion was filed on December 21, 1989, for a hearing on December 22, 1989. At the hearing on December 22, the trial court orally granted the motion to bifurcate and moved the final hearing date for the bifurcated issue of dissolution of the parties' marriage ahead eight days to January 2, 1990. The court, however, left the time of the hearing to be agreed upon between the attorneys. After the hearing, Mr. Tunderman's attorney would not agree to a time until the order granting the motion to bifurcate was signed.
On December 27, 1989, Mrs. Tunderman's counsel sent a letter to the trial judge with a copy to Mr. Tunderman's counsel indicating that Mr. Tunderman's counsel would not agree to a time for the dissolution hearing until the order granting the motion to bifurcate had been signed. *356 The order setting nonjury trial on the dissolution issue only was enclosed with the letter. However, unknown to Mrs. Tunderman's counsel, the trial judge was on vacation until January 2, 1990. Immediately upon the judge's return, the order granting the motion to bifurcate was signed. The order also advanced the nonjury trial on the dissolution issue to January 2, 1990, as previously established at the December 22, 1989 hearing.
The order setting nonjury trial dated January 2, 1990 indicated that the motion to bifurcate was granted on January 2, 1990. The order further set the nonjury trial on the issue of whether the marriage was irretrievably broken for the same day, at 10:30 a.m. Also on January 2, 1990, the final judgment of dissolution was entered retaining jurisdiction to address all other issues in the pleadings. The final hearing on all other issues was left to be held on January 10, 1990, as previously scheduled. However, due to time constraints hearings were held on subsequent dates. Portions of the final hearing and hearings on other issues were held on January 23, March 12, 13, May 17 and June 14, 1990. The notice of appeal or, in the alternative, petition for writ of certiorari, on the entry of this judgment was timely filed.
Although gravely ill, Mrs. Tunderman participated telephonically during most of the originally scheduled trial date, January 10, 1990. She died January 19, 1990. An order for substitution of Young Ja Lee, as personal representative of the estate of Mrs. Tunderman, was filed on February 1, 1990. A final judgment of dissolution regarding equitable distribution, rights of alimony and order on Mrs. Tunderman's motion for contempt was entered on May 29, 1990. A notice of appeal of this judgment was timely filed. The two appeals were then consolidated by this court.
Mr. Tunderman argues here that because the order granting the bifurcation and advancing the hearing on the dissolution to January 2, was dated January 2, that this was insufficient notice to him under Florida Rule of Civil Procedure 1.440. Rule 1.440 provides, in part, that "[t]rial shall be set not less than 30 days from the service of the notice for trial." The order setting nonjury trial, in this case, was dated November 27, 1989. This was thirty-six days prior to the January 2, 1990 hearing date. Therefore, Mr. Tunderman's reliance on our decision in Broussard v. Broussard, 506 So.2d 463 (Fla. 2d DCA 1987), is misplaced. In Broussard, the appellant/wife received less than two days notice of the final hearing of dissolution of marriage. Here, Mr. Tunderman had more than thirty days' notice. Further, Mr. Tunderman and his counsel had actual notice of the change in hearing dates and Mr. Tunderman was represented by counsel at all hearings. We also observe that Mr. Tunderman admitted in his answer that the marriage was irretrievably broken and therefore was not prejudiced by the advancement of the hearing date regarding the dissolution of marriage issue. We affirm the trial court's order granting the motion to bifurcate.
Mr. Tunderman next argues that the trial court erred in awarding to Mrs. Tunderman's estate substantially all of the liquid assets which were Mr. Tunderman's separate property. Mr. Tunderman argues that he received substantial sums of money from his father and his aunt which sums were maintained separately. There is substantial, competent evidence in the record to support the trial court's finding that the funds were marital assets. The funds were commingled in the parties' joint account for periods of time and properties were purchased with the funds and placed in joint names. It was also established that the parties used these funds to maintain their marital lifestyle. However, the trial court erred in awarding Mrs. Tunderman's estate the proceeds from the life insurance policy issued on her life and owned by Mr. Tunderman. The life insurance proceeds were paid as a result of Mrs. Tunderman's death after the dissolution of marriage petition was filed. These proceeds are not a marital asset and should have remained with Mr. Tunderman.
We agree with Mr. Tunderman's contention that the trial court abused its *357 discretion in awarding the estate substantially all of the liquid assets and Mr. Tunderman substantially all of the tangible assets. The final judgment of dissolution also requires Mr. Tunderman to pay substantially all of the parties' debts, including Mrs. Tunderman's medical expenses. The equitable distribution in this case improperly caused Mr. Tunderman to pass from prosperity to misfortune thereby "short-changing" him. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). Mr. Tunderman ended up with all of the tangible assets but no liquid assets to maintain them or pay debts.
A more equitable distribution would be to award each party a portion of the liquid assets and a portion of the tangible assets. The estate argues that it would not be able to maintain the tangible assets due to lack of funds. This argument is without merit, however, because it will receive liquid assets with which to maintain the tangible assets.
Accordingly, we hold that the life insurance proceeds of $15,000.00 paid on Mrs. Tunderman's death be awarded to Mr. Tunderman; that the estate is responsible for Mrs. Tunderman's medical bills in the amount of $20,302.92, charged on her credit cards; that the estate is awarded the vacation home in Melrose Landing, Putnam County, valued at $70,681.00; and that the Charles Schwab brokerage account valued at $145,528.00 is awarded one-half to Mrs. Tunderman's estate and one-half to Mr. Tunderman. In all other respects, the final judgment regarding equitable distribution is affirmed.
Affirmed in part, reversed in part and remanded with directions to the lower court to enter a final judgment in this cause in accordance with this opinion.
LEHAN and THREADGILL, JJ., concur.