# Third District Court of Appeal

## State of Florida

Opinion filed October 14, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-3077
Lower Tribunal No. 14-5314
_____

**Gary Robert Gromet,**
Appellant,

vs.

**Kirsten Lisbeth Jensen,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Crabtree & Associates, P.A., and John G. Crabtree, George R. Baise Jr., and Brian C. Tackenberg, for appellant.

Buckner, Shifrin, Etter, Dugan, Bradfute & Kohlman, P.A., and Robin Buckner and Robert F. Kohlman, for appellee.

Before ROTHENBERG, LAGOA, and SCALES, JJ.

ROTHENBERG, J.

Gary Robert Gromet ("the husband") appeals from the final judgment dissolving his marriage to Kirsten Lisbeth Jensen ("the wife"). Because the trial court erred by treating the husband's accounts as marital assets subject to equitable distribution, we reverse the equitable distribution portion of the final judgment and remand for entry of a final judgment consistent with this opinion.

## FACTUAL BACKGROUND

After seventeen years of marriage, the parties, who were both retired, separated when the wife moved out of the marital home. The wife petitioned to dissolve the marriage and requested that the trial court partition the marital home and equitably distribute their marital assets and liabilities after setting aside each party's nonmarital assets. The wife did not seek alimony.

At the hearing, the husband expressed his desire to remain in the marital home. The wife agreed to not pursue her request to partition the marital home if the husband was ordered to buy out her interest. In addition to the marital home, the wife had three accounts titled in her name—an IRA account and two Schwab accounts—that were opened during the marriage and funded with marital assets. It was undisputed that the wife's three accounts were marital assets subject to equitable distribution and that the value of the wife's three retirement accounts totaled $163,559.55.

The primary contention at the hearing was whether the husband's three

2

accounts—an Interactive Brokers account, a Schwab IRA account, and a Schwab One account—were marital or nonmarital assets. The evidence at trial showed that the Schwab IRA account was opened prior to the marriage, whereas the Schwab One account and Interactive Brokers account were opened during the marriage. However, it was undisputed that all three accounts were entirely funded with $400,000 the husband inherited from his mother in 1999.

As to the husband's three accounts, the wife testified that the husband placed his entire inheritance "in his brokerage account," but failed to clarify which account she was referring to.[1] Although the wife did not clarify which account she was referring to, the evidence showed that the husband initially placed his entire inheritance into his Schwab One account, and thereafter, he transferred funds from the Schwab One account to his Schwab IRA account and Interactive Brokers account. The wife had no access or control over any of the husband's accounts.

Although the wife conceded that the husband's three accounts contained funds solely from his inheritance, she asserted that all or a portion of the accounts lost their character as nonmarital assets based on two grounds. First, the husband commingled marital funds—$1100 from the liquidation of a marital business—into his "brokerage account," and therefore, the three accounts (not just the "brokerage

---

[1] During closing argument, the wife's counsel referred to the husband's "brokerage account," and thereafter, stated that she was referring to the husband's Interactive Brokers account. Closing argument, however, does not equate to testimony.

3

account") were transformed into marital assets. Second, because the husband personally managed his accounts during the marriage, any enhancement in value of the accounts was due to the husband's marital efforts and labor, and therefore, the enhancement in value was a marital asset.

The husband conceded that he used marital efforts to manage his accounts, but testified that the accounts actually decreased in value due to trading losses and because he used funds from an account to maintain the household. Thus, the husband argued that because his marital efforts did not result in an enhancement in value of his three accounts, the entire accounts remained nonmarital. Next, the husband testified that he deposited the $1100 from the liquidation of the marital business into the parties' marital account at Bank of America,[2] and therefore, no marital funds were ever commingled with his three accounts.

Following the hearing, the trial court entered its final judgment of dissolution of marriage. As agreed to by the parties, the trial court awarded the marital home to the husband. Further, the trial court awarded the wife her three retirement accounts and awarded the husband his three accounts. The trial court found that all six accounts were marital assets subject to equitable distribution. In concluding that the husband's accounts were marital assets, the trial court made the

_____

[2] After the parties' separation, the Bank of America account was retitled solely in the wife's name, and thereafter, the husband did not have access to that account. During the hearing, neither party introduced documentation showing which account, if any, the $1100 was deposited into.

4

following determinations: (1) the parties do not dispute that the husband's investment accounts were entirely funded during the marriage with the husband's inheritance; (2) the husband solely and actively managed his accounts; (3) the value of the Interactive Brokers account fluctuated over the years and, at times, decreased considerably, but due to the husband's marital labor and effort, the account had increased in value by the time the petition for dissolution of marriage was filed; (4) marital funds—$1100 from the liquidation of the marital business— were deposited into/commingled with the husband's Interactive Brokers accounts **and** other accounts; (5) the wife established that marital labor and funds enhanced the value of the husband's accounts, and therefore, the burden then shifted to the husband to show what portion of the increase was nonmarital; (6) the husband, however, failed to meet this burden, and therefore, the entire value of the husband's three accounts are marital assets; and (7) the Interactive Brokers account has a net value of $161,069.18, the Schwab IRA account is valued at $42,782.70, and the Schwab One account is valued at $61.24.

After considering the equity in the marital home ($265,000), the value of the husband's investment accounts ($203,913.12), and the value of the wife's retirement accounts ($163,559.55), the trial court ordered the husband to pay the wife $152,676.79 as a cash equalizer. The trial court denied the husband's motion to set aside the final judgment, and the husband's appeal followed.

## ANALYSIS

### Classification of the Husband's Three Accounts as Marital Assets Subject to Equitable Distribution

The husband contends that the trial court erred by classifying his three accounts as marital assets subject to equitable distribution where these accounts were entirely funded with his inheritance, the wife failed to present competent, substantial evidence that marital funds were deposited into or commingled with any of the husband's accounts, and the evidence showed that, despite actively managing his accounts, the accounts decreased in value. For the reasons that follow, we agree with the husband.

A trial court's determination that an asset is marital or nonmarital involves mixed questions of law and fact. Although we defer to the trial court's factual findings if they are supported by competent, substantial evidence, we review the trial court's legal conclusions de novo. Valladares v. Junco-Valladares, 30 So. 3d 519, 523 (Fla. 3d DCA 2010); Puskar v. Puskar, 29 So. 3d 1201, 1201 (Fla. 1st DCA 2010).

When the husband initially funded his accounts, the accounts were nonmarital assets because they were exclusively funded with the husband's inheritance from his mother. See § 61.075(6)(b)2., Fla. Stat. (2014) (providing that nonmarital assets include "[a]ssets acquired separately by either party by

6

noninterspousal gift, bequest, devise, or descent, and asset acquired in exchange for such assets"). We address the trial court's determination that the husband's accounts or portion of the accounts lost their character as nonmarital assets because marital funds were deposited into or commingled with the husband's accounts and/or the accounts increased in value due to the husband's marital efforts and labor in actively managing these accounts.

A. Alleged Commingling of Marital Funds into Husband's Accounts

"Nonmarital assets may lose their nonmarital character and become marital assets where . . . they have been commingled with marital assets. This is especially true with respect to money because '[m]oney is fungible, and once commingled it loses its separate character.'" Dravis v. Dravis, 170 So. 3d 849, 851 (Fla. 2d DCA 2015) (quoting Pfrengle v. Pfrengle, 976 So. 2d 1134, 1136 (Fla. 2d DCA 2008)) (citation omitted); see also Crockett v. Crockett, 708 So. 2d 329, 330 (Fla. 1st DCA 1998) (holding that nonmarital funds "lost any arguable separate identity when the wife commingled them with her overtime earnings made during the marriage").

In the instant case, the wife asserted that funds ($1100) from the liquidation of a marital business were deposited into the husband's "brokerage account," and therefore, the husband's three accounts were transformed into marital accounts. At the hearing, the wife did not suggest that portions of the $1100 were deposited into

7

each of the husband's three accounts, but only that the entire $1100 was deposited into the husband's "brokerage account." Therefore, the trial court's finding that marital funds were deposited into the Interactive Brokers account **and** the husband's other two accounts is not supported by competent, substantial evidence.

Although we have concluded that there was no substantial, competent evidence to support the claim that portions of the $1100 were deposited into each of the husband's three accounts, we must still address whether the wife presented competent, substantial evidence that the $1100 was deposited in any of the accounts, and if so, which specific account. As stated earlier, the wife merely testified that the $1100 was deposited into the husband's "brokerage account." The wife did not specify whether her reference to the "brokerage account" was to the husband's Interactive Brokers account, Schwab IRA account, or Schwab One account. We do know, however, that when the wife testified that the husband's inheritance was initially deposited into the husband's account, the wife referred to the account it was initially placed in as the husband's "brokerage account." However, the evidence reflects and the wife's counsel at oral argument agreed that the husband initially deposited his entire inheritance into his Schwab One account. The trial court has valued that account at only $61.24.

Importantly, with regard to whether the wife presented competent, substantial evidence as to whether the husband deposited the $1100 into any of his

nonmarital accounts, the record reflects that it was undisputed that the wife had no access to the business account or any of the husband's three accounts and she had no specific knowledge as to the husband's management of these accounts. Because the wife failed to introduce any evidence to support her vague statement that the $1100 was deposited into one of the husband's unspecified nonmarital accounts, there was no competent, substantial evidence as to where the marital funds were allegedly deposited. Accordingly, we reverse the portion of the final judgment finding that the husband's three accounts lost their character as nonmarital assets due to commingling.[3]

B. Alleged Enhancement in Value of Husband's Accounts due to Husband's Marital Efforts and Labor

Section 61.075(6)(a)1.b., Florida Statutes (2014), provides that marital assets includes "[t]he enhancement in value and appreciation of nonmarital assets resulting . . . from the efforts of either party during the marriage." See Eager v. Eager, 696 So. 2d 1235, 1236 (Fla. 3d DCA 1997) (providing that "the enhancement in value of a non-marital asset due to marital labor or effort is a [marital] asset subject to equitable distribution"). As the wife was the party

---

[3] Even if the wife had met her burden of establishing that the $1100 was deposited into one of the husband's three accounts, which we do not so conclude, only that one account would have lost its nonmarital character, not all three accounts, and, based on her testimony, the account it appears she was referring to was the Schwab One Account, which the trial court valued at $61.24.

9

asserting that the husband's marital efforts enhanced the value of his nonmarital accounts, the burden of proof was on the wife to establish: (1) the husband actively managed his accounts during the marriage; (2) as a result of the husband's marital efforts, his accounts **enhanced in value**; and (3) the actual value of the enhancement. See Robertson v. Robertson, 78 So. 3d 76, 77 (Fla. 5th DCA 2012) (holding that where the wife established that marital efforts were utilized to enhance the value of the husband's nonmarital business, the wife also had "the burden of proving that value"); Pereboom v. Pereboom, 959 So. 2d 1205, 1206 (Fla. 4th DCA 2007) (holding that the burden of proof was on the wife as she asserted that the husband's nonmarital accounting practice enhanced in value during the marriage).

In the instant case, the trial court's finding that the husband actively managed his accounts is supported by competent, substantial evidence. However, the trial court's finding that the accounts had increased in value by the time the petition for dissolution of marriage was filed is not supported by competent, substantial evidence. The record actually reflects that the husband's accounts had **decreased** in value by the time the wife filed the petition for dissolution of marriage. Notably, the sum total of these three accounts, which were initially funded by the $400,000 inheritance, was substantially lower than $400,000, and during the hearing, the trial court actually noted that the evidence demonstrated

10

that the accounts had not increased in value. Because the wife failed to establish that the husband's accounts **enhanced in value** due to marital efforts, we conclude that the trial court erred as a matter of law by finding that the husband's accounts were transformed into marital assets based on this ground.[4]

## CONCLUSION

Based on our determination that the wife failed to establish that marital funds were commingled with the husband's accounts or that the husband's accounts increased in value as a result of the husband's marital labor, we reverse the portion of the final judgment finding that the husband's accounts are marital assets and remand for entry of a final judgment consistent with this opinion, including a recalculation of the cash equalizer due to the wife from the husband.

We decline to separately address the remaining issues raised by the husband as we find no error and because these issues do not merit discussion.

Affirmed in part, reversed in part, and remanded.

---

[4] If the wife had met her burden of proof, including her burden to establish the value of the enhancement, the burden would then have shifted to the husband to "establish whether any part of the increase was the result of passive market conditions and, thus, is exempt from equitable distribution." O'Neill v. O'Neill, 868 So. 2d 3, 5 (Fla. 4th DCA 2004).

11