DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ESTATE OF CHARLES THOMAS MERRILL,**
Appellant/Cross-Appellee,

v.

**KAREN MERRILL,** n/k/a Karen Blilie,
Appellee/Cross-Appellant.

No. 4D2025-0989

[June 17, 2026]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Robert Lee Pegg, Judge; L.T. Case No. 432019DR000529DRAXMX.

David Merrill of The Associates, Palm Beach Gardens, for appellant/cross-appellee.

Jessica Marie VanValkenburgh of McCarthy, Summers, Wood, Norman, Melby & Schultz P.A., Stuart, for appellee/cross-appellant.

SHAW, J.

This appeal follows a final judgment of dissolution of marriage. Charles Merrill ("the husband") and Karen Merrill ("the wife") married in 1999. Nearly twenty years later, the husband filed his petition for dissolution of marriage ("the petition"). The wife filed a counterpetition for dissolution of marriage and other relief ("the counterpetition"). The proceedings included multiple hearings and continuances before trial. The husband passed away before the final trial was held, and his estate ("the estate") was substituted as the proper party.

The estate's appeal, and the wife's cross-appeal, raise issues related to the distribution of two life insurance policies, a marital home, sprint race cars, and a motorhome loan. For the reasons discussed more fully below, we reverse the circuit court's classification and distribution of two life insurance policies and reverse its distribution of the proceeds from the sale of six sprint race cars. We affirm on all other issues without comment.

## I. Classification and Distribution of Life Insurance Policies

"A trial court's determination that an asset is marital or nonmarital involves mixed questions of law and fact. Although we defer to the trial court's factual findings if they are supported by competent, substantial evidence, we review the trial court's legal conclusions de novo." *Gromet v. Jensen*, 201 So. 3d 132, 135 (Fla. 3d DCA 2015). "The standard of review of a trial court's determination of equitable distribution is abuse of discretion." *Whittaker v. Whittaker*, 331 So. 3d 719, 720-21 (Fla. 4th DCA 2021) (internal citation omitted).

"'Marital assets and liabilities' include all of the following … [a]ssets acquired and liabilities incurred during the marriage, individually by either spouse or jointly by them." § 61.075(6)(a), Fla. Stat. (2024). Marital assets are items having value. *Ross v. Ross*, 20 So. 3d 396, 397 (Fla. 4th DCA 2009).

> The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage.

§ 61.075(7), Fla. Stat. (2024).

"If an asset or liability does not exist as of the applicable cut-off date mandated by Section 61.075(7), then the asset or liability cannot be distributed in equitable distribution." *MacPherson v. MacPherson*, 387 So. 3d 418, 420 (Fla. 6th DCA 2024).

"Life insurance policies with no cash surrender value are not treated as marital assets, because a term policy has no value until the contingency of the death of the insured occurs." *Ross*, 20 So. 3d at 398[1]; *see also Tunderman v. Lee*, 585 So. 2d 354, 356 (Fla. 2d DCA 1991) (holding the trial court erred in awarding the former wife's estate proceeds from a life insurance policy on her life that was owned by the former husband, because the policy was a non-marital asset).

---

[1] In *Ross*, we reversed a circuit court's decision to include a term life insurance policy in its equitable distribution scheme, finding the policy was not a marital asset. Because the ex-husband in *Ross* received the life insurance proceeds upon his brother's death after the petition was filed, the proceeds "were not benefits 'accrued during the marriage.'" *Id.* at 399.

A. Lincoln National Life Insurance Policy

At the time of the husband's petition, the wife owned a term-life insurance policy (the "Lincoln policy"), payable on the husband's death. After the husband filed his petition, but before the husband passed away, the wife sold the Lincoln policy for cash. The proceeds were kept in the parties' respective attorneys' trust accounts until further order.

The circuit court's final judgment ruled the Lincoln policy proceeds were a marital asset and ordered the proceeds to be distributed equally. That was error.

Here, the parties did not have a separation agreement. Therefore, the cut-off date for determining assets and liabilities to be classified as marital or non-marital was the petition's filing date (July 19, 2019). *See MacPherson*, 387 So. 3d at 420; *see also* § 61.075(7), Fla. Stat. (2024). On July 19, 2019, the Lincoln policy was a term policy with no cash surrender value. Thus, on the determinative date, the Lincoln policy had no value. *See Ross*, 20 So. 3d at 397. It was not a marital asset. The wife sold the policy after the husband filed the petition, so the sale proceeds "were not benefits 'accrued during the marriage.'" *Id.* at 399. The proceeds remained in trust accounts held by the respective attorneys, never commingled, and remained a non-marital asset. *See Rivera v. Rivera*, 404 So. 3d 442, 445 (Fla. 3d DCA 2023) (finding that the house which the husband inherited from his grandmother did not lose its non-marital status when he sold it, and the sale proceeds remained non-marital as no evidence showed that the funds were commingled in any marital account).

Thus, the circuit court erred in classifying and distributing the Lincoln policy proceeds as a marital asset. *See Ross*, 20 So. 3d at 397. Because the Lincoln policy did not exist as a marital asset on the applicable cut-off date mandated by section 61.075(7), the Lincoln policy's proceeds cannot be distributed in equitable distribution. *See MacPherson*, 387 So. 3d at 420. On remand, the Lincoln policy's proceeds should be excluded from equitable distribution and revert to the wife as the original owner. *See Tunderman*, 585 So. 2d at 356.

B. Americo Life Insurance Policy

At the time of the husband's petition, he owned a term-life insurance policy (the "Americo policy"), insured by his own life. The husband named his two adult daughters as the policy's beneficiaries. At one point during the marriage, the husband let the Americo policy lapse. Through the wife's

efforts, the Americo policy was reinstated. At trial, she testified the husband had promised to add her as a third beneficiary. However, the husband never changed the beneficiary designations to include the wife.

The circuit court's final judgment ordered the Americo policy to be distributed in thirds based on the husband's purported representations. The circuit court ruled that the Americo policy was a marital asset, regardless of the truth of the wife's testimony regarding her beneficiary status. That also was error.

Here, on the determinative date for classifying assets as marital or non-marital, the Americo policy was a term policy with no value because the husband was still alive. Accordingly, the Americo policy was not a marital asset and should not have been included in equitable distribution. *See Ross*, 20 So. 3d at 398; *Gromet*, 201 So. 3d at 135; *MacPherson*, 387 So. 3d at 420. On remand, the Americo policy should be excluded from equitable distribution and revert to the original beneficiaries, the husband's adult daughters.[2] *See Ross*, 20 So. 3d at 399.

## II.  Distribution of Sprint Race Cars

"Although a property distribution need not be exactly equal, parties to a dissolution proceeding are entitled to an equitable distribution of the marital assets." *Buttner v. Buttner*, 484 So. 2d 1265, 1266 (Fla. 4th DCA 1986). "Distribution of marital assets and liabilities must be supported by factual findings in the judgment or order based on competent substantial evidence." *Bardowell v. Bardowell*, 975 So. 2d 628, 629 (Fla. 4th DCA 2008) (citing § 61.075(3), Fla. Stat.).

At the time of the husband's petition, he owned six sprint race cars. The wife testified that five of the six sprint cars were constructed during the marriage. Following trial, the parties agreed to sell the six sprint cars. In its final judgment, the circuit court found one red Kinser sprint car was the husband's non-marital asset. Nevertheless, the circuit court ordered the parties to divide the sale proceeds equally.

Based upon the competent, substantial evidence presented at trial, the circuit court properly classified five of the six sprint cars as marital assets.

---

[2] The circuit court also erred in awarding one-third of the Americo policy proceeds to the wife based on promissory estoppel. The wife failed to satisfy a required element for promissory estoppel because she did not show a detrimental changed position because of the Americo policy. *See Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. 3d DCA 2006).

*See Whittaker,* 331 So. 3d at 721. However, the circuit court erred in equally distributing the entire sale proceeds of the sprint cars, as only five of the six cars were marital assets. *See Bardowell,* 975 So. 2d at 629. The wife was entitled to an equitable distribution of the marital assets only. *See Buttner,* 484 So. 2d at 1266. On remand, the portion of the sale proceeds from the sale of the red Kinser sprint car (the non-marital asset) should be excluded from the circuit court's equitable distribution. *See Whittaker,* 331 So. 3d at 721.

## Conclusion

For the foregoing reasons, we reverse the circuit court's ruling on the classification and distribution of the Lincoln policy and the Americo policy, reverse the circuit court's ruling on the distribution of the proceeds from the sale of the sprint cars, and remand for further proceedings consistent with this opinion. We affirm on all other issues.

*Affirmed in part, reversed in part, and remanded.*

KUNTZ, C.J., and LEVINE, J., concur.

\*　　　\*　　　\*

***Not final until disposition of timely-filed motion for rehearing.***